IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE MOYER GROUP, LLC, d/b/a<br>FRIENDSHIP FIRST<br>a Pennsylvania limited liability corporation<br><br>and<br><br>HOLLY KETTLER AND DAVID MOYER<br><br>Plaintiffs,<br><br>v.<br><br>BOROUGH OF TULLYTOWN, a Pennsylvania municipal corporation,<br><br>and<br><br>PLANNING COMMISSION OF TULLYTOWN, PENNSYLVANIA<br><br>Defendants. | CIVIL ACTION NO. 2:25-cv-06640 |

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**(DAMAGES AND INJUNCTIVE RELIEF REQUESTED)**

**PRELIMINARY STATEMENT**

This case presents the familiar conflict between the legal principle of non- discrimination and the political principle of not-in-my-back yard ("NIMBY"). This action seeks a declaratory judgment, temporary and permanent injunctive relief, and damages for discrimination in zoning on the basis of handicap or disability. The Defendants have deviated from normal practices in the manner they

address Plaintiffs zoning application with the intent, purpose, and/or effect of discriminating against persons with handicaps or disabilities. This discrimination has been carried out through the use of, amongst other things, a policy of exclusionary zoning from a residential zone for housing for persons with disability, a refusal to provide a reasonable accommodation to waive that exclusion, an arbitrary interpretation of zoning laws and, even if not arbitrary, unreasonably restrictive zoning policies, and a refusal to hear Plaintiffs' Fair Housing Act claims, all of which have denied Plaintiffs' ability to provide housing to persons in recovery from substance use disorder. This action arises under the Fair Housing Act of 1968 ("FHA"), as amended, 42 U.S.C. §3601, et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §1213, et seq.

## I.    JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.§§ Sections 1331, 1343, 42 U.S.C. § 3613, and 42 U.S.C. §12133.

2. Venue is proper in the United States District Court for the Eastern District of Pennsylvania as all acts complained of occurred within this District.

## II.    PARTIES

3. The Moyer Group, LLC is a Pennsylvania Limited Liability Corporation with its principal place of business located in Morristown, Pennsylvania. The Moyer Group owns Friendship First ("FF"), a provider of housing for persons in recovery from substance use disorder ("SUD"). FF rents the dwellings located at 412 and 444 Main Street, Tullytown, Pennsylvania for the purpose of providing housing for persons in recovery from SUD.

4. Plaintiff, Holly Kettler owns the property located at 412 Main Street, in the Borough of Tullytown, Pennsylvania.

5. Plaintiff, David Moyer owns the property located at 444 Main Street, in the Borough

of Tullytown, Pennsylvania

6. The Borough of Tullytown ("Borough") is a Pennsylvania municipal corporation. The Borough is responsible for the acts of its agents and employees, including enacted and enforcement of its zoning code. The Borough is a public entity under the Americans with Disabilities Act, 42 U.S.C. §12131.

7. The Planning Commission ("PC") is responsible for the interpretation of the Borough's zoning code. It hears and decides all applications for special use permits that seek exceptions and waivers of the Borough's zoning code. The PC is a public entity under the Americans with Disabilities Act, 42 U.S.C. 12131.

### III. STATUTORY AND REGULATORY FRAMEWORK

8. In 1988, Congress amended the Fair Housing Act, 42 U.S.C. Section 3601 et seq., to extend the guarantee of fair housing to handicapped individuals. Congress also authorized the Secretary of the United States Department of Housing and Urban Development to promulgate regulations to implement the Fair Housing Act. 42 U.S.C. Section 3614a.

9. Under the Fair Housing Act, the term "handicap" means, with respect to a person, a "physical or mental impairment which substantially limits one or more of such person's major life activities, a record of such an impairment, or being regarded as having such an impairment." 42 U.S.C. Section 3602(h).

10. Under the Fair Housing Act, it is unlawful to discriminate against or otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap of that buyer, renter, or person residing in or intending to reside in that dwelling after it is sold, rented, or made available. 42 U.S.C. Section 3604(f)(1).

11. The Fair Housing Act further provides that it is unlawful to discriminate against any

person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of the handicap of that person or persons residing in or intending to reside in that dwelling after it is sold, rented, or made available. 42 U.S.C. Section 3604(f)(2).

12. The federal regulations implementing the Fair Housing Act specifically prohibit, as a discriminatory activity, providing municipal services differently because of handicap. 24 C.F.R. 100.70 (d)(4).

13. The federal regulations implementing the Fair Housing Act further make it unlawful, because of handicap, "to restrict or attempt to restrict the choices of a person by word or conduct in connection with seeking, negotiating for, buying or renting a dwelling so as to . . . discourage or obstruct choices in a community, neighborhood or development." 24 C.F.R. Section 100.70(a).

14. The American with Disabilities Act requires that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, program, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. Section 12132.

15. The federal regulations implementing the Americans with Disabilities Act prohibit a public entity from administering a licensing program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, nor may a public entity establish requirements for the programs or activities of licensees that subject qualified individuals with disabilities to discrimination on the basis of disability. 28 C.F.R. Section 35.130(6).

16. The federal regulations implementing the Americans With Disabilities Act also make it unlawful for a public entity, in determining the site or location of a facility, to make selections that have the purpose or effect of excluding individuals with disabilities from, denying them the benefits

of, or otherwise subjecting them to discrimination. 28 C.F.R. Section 35.130(4)(I).

## IV. STATEMENT OF FACTS

### A. FRIENDSHIP FIRST

17. The mission of FF is to promote and advance recovery, and to promote quality housing for recovering residents and develop standards that further advance recovery. Friendship First offers safe, sober residence to newly recovering men and women in a home atmosphere.

18. All of the individuals who participate in the FF program and reside in the recovery residences located at either 412 Main Street or 444 Main Street in Tullytown Borough, Pennsylvania, are individuals who are disabled by virtue of their SUD combined with their current participation or completion of a substance abuse treatment program.

19. FF does not provide a substance abuse treatment program. There is no counseling, or therapy offered to the residents. Residents are required to attend meetings of 12 step groups, i.e. Alcoholics Anonymous, Narcotics Anonymous outside of the house.

20. The residents of FF voluntarily choose to participate in the program and reside at either 412 or 444 Main Street. Residents of the FF live together as a family and make group decisions based on a collaborative basis. Both 412 Main Street and 444 Main Street are used as single family homes with similar support and collaborative functions. The residents of the FF relate to each other as the functional equivalent of a single family.

21. All residents of FF have access to the entire house, all of the household facilities, and function together as a single housekeeping unit. There are not any special locks on the doors of the bedrooms or other rooms in the house. The residents share all household responsibilities, and live together to create a "family" atmosphere, where all aspects of domestic life are shared by all the

residents.

22. FF is not a substance abuse treatment center, halfway house, shelter, or a community care facility. There is no treatment, counseling, therapy, or any type of health care services provided by FF. FF's recovery houses are licensed by the Commonwealth of Pennsylvania Department of Drug and Alcohol Programs. There are no institutional personnel involved in the supervision or management of the FF, and FF does not provide a "recovery program" or services.

23. There is no limit on the amount of time that the residents can live at FF so long as they follow a simple set of house rules. All residents are required to be alcohol and drug free which is a condition of continued residency at FF.

24. FF provides a peer-driven sober living environment designed to increase self-responsibility and support for persons in recovery. The FF program provides a supportive home atmosphere for persons in recovery from alcoholism and substance abuse. There is no counseling, or therapy offered to the residents.

25. The residents of FF must freely choose to participate in the FF program. Residents of FF live together as a family and make group decisions based on democratic procedures. The dwelling is used as single family home with similar support and collaborative functions. The residents of FF relate to each other as the functional equivalent of a single family.

      B.      LINE LOT CHANGE REQUEST FOR 412 AND 444 MAIN STREET

26. 412 Main Street is on a lot that is approximately 20,090.6 square feet in size. It is approximately .46 acres large. The property consists of an approximately 2,000 square feet existing two-story single family detached dwelling, an approximately 400 square foot existing accessory building and an approximately 400 square foot existing masonry garage in the rear. There is no vehicular access to the site. The property is bound by a residential property to the northeast, a

light industrial land use to the east, a residential property to the southeast, Wood Steet to the southwest and Main Street to the northwest. It is located in the BC Borough Center zoning district.

27. 444 Main Street is on a lot that is approximately 14,311.42 square feet in size. It is approximately .33 acres large.  It contains a two-story dwelling with an attached garage, wooden deck, macadam driveway, and a walkway.  It is located in the BC Borough Center zoning district.

27. The purpose of this BC Borough Center zoning district is to maintain the character of the Borough core by preventing overcrowding, encouraging coordinated efforts to meet circulation and parking needs, to provide for public convenience, and to fulfill the other broad purposes of the zoning chapter. This district provides for a variety of housing types and a few neighborhood-type commercial and professional services.

28. The Plaintiffs use the both dwellings at 412 and 444 Main Street as state-licensed recovery houses that provides living accommodations for individuals with substance use disorder. No drug and alcohol treatment are offered. Residents living in the facility are prohibited from actively using drugs or alcohol.

29. In October 2021, Plaintiffs submitted an application and plan set to the Borough seeking preliminary /final minor subdivision and land development approval to subdivide both FF properties and construct a second single family residential dwelling to the rear of the existing residential dwelling.

30. In June 2022, Plaintiffs submitted an application for 412 Main Street and plan set to the Borough seeking preliminary/final minor subdivision and land development approval to adjust the lot line between Lot 1 and Lot 2, and to construct a second single-family residential dwelling on Lot 2.

31. The proposed lot line adjustment would enlarge Lot 1 from 6,198.16 sq. ft. to 9,111.07 sq. ft. and reduce Lot 2 from 8,113.26 sq. ft. to 5,200.35 sq. ft. Other than the existing nonconforming side yard setback associated with the existing residential dwelling, the proposed new lots and single-family dwelling complied with all requirements in the Tullytown Borough Zoning Ordinance (the "Zoning Ordinance").

32. After receiving review letters from Borough staff, professional consultants, and the Bucks County Planning Commission, Plaintiffs submitted a revised plan set on December 6, 2022.

33. The proposed subdivision complied with all requirements of the Tullytown Borough Zoning Ordinance, but for the existing front and side yard nonconformities discussed above, for which waivers were requested. These types of waivers are routinely granted.

34. From October 2021 through December 2022, Plaintiffs submitted three revised plan sets in response to review letters issued by Borough staff, professional consultants retained by the Borough, and the Bucks County Planning Commission.

35. As required by the Borough Subdivision and Land Development Ordinance ("SALDO"), on Monday, February 13, 2023 the Borough Planning Commission reviewed the revised plan set, as well as another minor land development application submitted by Mr. Moyer for the property located at both 412 and 444 Main Street.

36. During the meeting a Planning Commission member, Wilhelmina Conca, asked:

    a. whether Plaintiffs intended to use the new detached residential dwelling as a "halfway house,"

    b. how many people had died in the houses owned by Plaintiffs, and

    c. whether individuals residing in the new dwelling would be allowed to use methadone.

37. During public comment, several members of the audience objected to the project on the basis that the new dwelling would be used as a recovery house or halfway house and requested that a "town meeting" be held on the project.

38. Planning Commission member Conca, who lives next to 412 Main Street, while the application was pending before the Commission, approached Plaintiff Moyer and offered to buy the property.

39. Borough Councilmember Brian Servis appeared at the Planning Commission meeting and gave comments in opposition to both projects, which centered around his assumption that the proposed residential dwellings would be used as recovery houses.

39. Mr. Moyer responded to the questions from the Planning Commission members and the general public by stating that the new dwelling would be used as a single-family home, as permitted by the Zoning Ordinance.

40. Following public comment, the Planning Commission voted to recommend denial of the application to Council on the basis that it had not received the review letter from the Bucks County Planning Commission, which was issued December 22, 2021, and on the basis that it had not received a review letter from the Borough Fire Marshal.

42. On February 21, 2023, the Borough Coordinator forwarded Plaintiffs' attorney an email dated February 17, 2023 from the Borough Fire Marshal, in which he recommended approval of the plan from a fire safety perspective.

43. Specifically, the email stated:

"I received a request on 2/15/2023 dated 6/29/2022 to review plans on a St Lot Line change request on the property of 444 Main Street. I reviewed the attached drawings and did a visual of the property on 2/17/2023. Due to the complete 360 view of the property I have come to the evaluation

from a fire safety point of view that this request is recommended by this office for approval from a Fire safety point of view only. This is for Fire Safety compliance only and has no bearing on any other office or evaluator. Yours sincerely, David Pearl, Chief Fire Marshal, Emergency Manager".

44. It was learned that Fire Marshal Pearl had entered on to the property without authorization or permission from Plaintiffs. This trespass did not involve inspecting the property for fire safety purposes.

45. The Borough Council reviewed the revised plan set at its meeting on March 1, 2023. Prior to the meeting, Plaintiff's engineer submitted a letter responding to the Borough engineer's most recent review letter and providing a revised waiver request letter. The waiver request letter sought waivers and/ or modifications from the requirements of the SALDO and provided justifications for those waivers.

46. During the Council meeting, the Borough Engineer stated that all technical comments in his review letters had been addressed and that the only remaining issue was whether to grant the requested waivers.

48. None of the Borough engineer's prior review letters had indicated any concerns about the requested waivers.

49. At the conclusion of Plaintiffs' presentation of the requested waivers and justification for those waivers, a number of residents made public comments opposing the project based on its presumed use as a recovery house.

50. Following public comment, the Council voted to deny all of the requested waivers and to deny approval of the application.

51. At the March 1, 2023 Council meeting the following occurred:

    a. One member of the audience stated that the people at the current residence

were "laying on blankets and doing God knows everything ... that is no way for this community to be run." He further stated, "[t]hat's the kind of caliber of people you have going in there" referencing a current resident driving through his garden. He also stated, "[n]obody knew what was going on with the last sober house that was thrown on 412."

b. Planning Commission member Wilhelmina Conca stated, "I think that it is time for the Borough to do like Bristol Township and put a maximum amount of recovery houses or halfway houses in this town".

52. Council member Servis, Council Vice President Joseph Shellenberger, and current Fire Marshall David Pearl have disseminated a political advertisement using their opposition to such facilities as a principal aspect of their election campaigns, expressly and unequivocally stating that they are: "[o]pposed to any Future Drug Rehab/Sober Living Facilities in Tullytown Borough.

53. One of the reasons given for the denial was based on the comments of Fire Marshal Pearl, who stated that the streets were too narrow for his fire trucks to respond to fire emergency. The narrow street is a pre-existing condition that affects all landowners in the vicinity of 412 and 444 Main Street and is a pretextual reasons for denying the application based on the disability of the proposed residents.

54. Plaintiffs appealed the denial of their application to the Pennsylvania Court of Common Pleas, wherein they alleged that the Borough Council deviated from its normal procedures and refused to apply established land use law in denying the application.

55. The Court of Common Pleas granted Plaintiffs' motion to allow the Plaintiffs to supplement the record because the Borough failed to produce all relevant records as required by law.

56. In September 2024, Plaintiff's attorney made a reasonable accommodation request to

the Borough to grant the waivers that had not been addressed by the Borough Council.

57. In October, 2024, Plaintiffs attorney sent the Borough another letter, when the first letter requesting a reasonable accommodation went unanswered.

58. Counsel for the Borough in October left a voice mail message for Plaintiffs' counsel that he would respond to the reasonable accommodation request.

59. Counsel for the Borough did not return Plaintiffs' counsel telephone calls concerning the reasonable accommodation request, and the request has never been answered by the Borough.

60. The effect of Defendant's actions has been to prevent the Plaintiffs from residing at the dwelling of their choice or in any other home zoned for single family use in Tullytown Borough.

61. Plaintiffs are aggrieved persons as they are disabled persons or associated with disabled persons under the Fair Housing Amendments act of 1988, 42 U.S.C. Section 3602(d) and (I) who have been injured by Defendant's discriminatory conduct and have suffered damages, economic loss and a loss of civil rights as a result of the Defendant's conduct.

62. 415 Main Street is a dwelling within the meaning of section 802(b) of the Fair Housing Act, 42 U.S.C. Section 3602(b).

63. The effect of the Tullytown Borough's actions is to deny needed housing opportunities to recovering alcoholics and substance abusers within City.

64. The effect of the conduct of the Tullytown Borough is to limit the housing opportunities of unrelated disabled persons by denying them the right to live together as a group in any residential zoning district in within the City.

65. The Tullytown Borough is treating the residents of the aforementioned dwelling in a discriminatory fashion, and is imposing far more stringent fire, zoning, building, property maintenance and land use requirements on this group of unrelated disabled individuals living

together than it imposes upon individuals living together who are related by blood or marriage or other groups of unrelated disabled persons.

66. By arbitrarily and illegally classifying the premises described as something other than a single family use the Tullytown Borough is making single family housing unavailable to persons recovering from drugs and alcohol addiction who reside in dwellings.

67. The Tullytown Borough has acted under color of state law in failing to affirmatively further fair housing in its code enforcement activities with the purpose and effect of discriminating against Plaintiffs solely because of their handicap, and applying those codes so as to deny Plaintiffs the residential opportunities available to persons related by blood, marriage or adoption, or other groups of similarly situated unrelated disabled persons.

68. Plaintiffs are living in fear of losing their home and are suffering anxiety, emotional distress, pain, setbacks in their efforts at recovery, and other irreparable harm as a result of Defendant's actions. They have no adequate remedy at law.

69. The Tullytown Borough has denied Plaintiffs due process of law by the arbitrary manner in which it has classified the premises occupied by the Plaintiffs as something other than a single family use and is seeking to use its municipal powers to force the plaintiffs from living within residential zones within the Tullytown Borough

70. The Tullytown Borough, has failed to affirmatively further fair housing in the administration and application of its zoning, building, property maintenance and life safety codes.

71. The Tullytown Borough has utilized its municipal services to threaten, intimidate, harass and coerce the Plaintiffs after they have exercised their rights under the Federal Fair Housing Act.

72. The City is intentionally and maliciously harassing, intimidating and interfering with

the plaintiffs and persons associated with the plaintiffs with the intent of preventing from housing from existing in residential neighborhoods.

## VI.  CLAIMS FOR RELIEF

### COUNT I

### FAIR HOUSING ACT

73. Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 72 above.

74. Defendant, Tullytown Borough, is violating Plaintiffs' rights under the Fair Housing Act, 42 U.S.C. Sections 3601, *et. seq*, and its implementing regulations by:

   a. denying and otherwise making housing unavailable to the Plaintiffs because of their disability;

   b. using the Borough's zoning, property maintenance and building codes as a pretext to exclude the Plaintiffs because of their disability;

   c. enforcing discriminatory zoning, property maintenance and building rules and policies on the Plaintiffs because of their disability;

   d. interfering with the right of the Plaintiffs to live in the dwelling of their choice;

   e. failing to make reasonable accommodations in its zoning, building and property maintenance codes so as to afford the Plaintiffs an equal opportunity to use and enjoy the aforementioned dwelling; and,

   f. retaliating against Plaintiffs because of their exercise their fair housing rights.

### COUNT II

### AMERICANS WITH DISABILITIES ACT

75. Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 74 above.

76. The Plaintiffs are associated with, and/or providing housing to people with disabilities

as defined in 42 U.S.C. 12102(2).

77    The Defendant, Tullytown Borough, Pennsylvania is a public entity under 42 U.S.C. 12131(1).

78.    The actions of the Defendant, Tullytown Borough, Pennsylvania to exclude 415 Main Street from residential zones violate the rights of the Plaintiffs under the Americans With Disabilities Act, 42 U.S.C. 12132 *et. seq.*, and the regulations promulgated thereunder by:

    a.    denying the individual Plaintiffs who are in recovery from alcoholism and substance abuse those in recovery the opportunity to participate in or benefit from the supportive housing program offered by Friendship First;

    b.    using land use, building and property maintenance ordinances and methods of administering those ordinances with the purpose of subjecting the Plaintiffs to discrimination on the basis of their handicap;

    c.    subjecting the Plaintiffs, on the basis of their disability, to discrimination;

    d.    denying the prospective individual residents of 412 and 444 Main Street , those in recovery, an opportunity to participate in a program in the most integrated setting appropriate to their needs;

    e.    denying the individual Plaintiffs and people with disabilities an equal opportunity to participate in or benefit from services and programs equal to those of people without disabilities;

    f.    utilizing licensing and permit requirements to provide municipal code enforcement services that are not equal to groups of related non-disabled persons and groups of unrelated disabled persons who are not recovering alcoholics and drug addicts;

    g.    utilizing licensing and permit requirements, a requirement not imposed upon other groups of related or unrelated non disabled persons, to deny Plaintiffs because of the handicap of the

prospective residents of 412 and 444 Main, the enjoyment of any rights.

## RELIEF SOUGHT AS TO ALL COUNTS

**WHEREFORE**, Plaintiffs pray that the Court award them the following relief:

1. Enter a temporary restraining order and/or preliminary and permanent injunctions restraining Defendant, Tullytown Borough from taking actions either directly or indirectly which would interfere in any way with Plaintiffs' developing 412 and 444 Main Street.

2. Enter a declaratory judgment that Defendant, Tullytown Borough, Pennsylvania has illegally discriminated against Plaintiffs by arbitrarily and capriciously applying it zoning, building and property maintenance codes to the occupancy of 412 and 444 Main Street by groups of recovering alcoholics and addicts, thereby interfering with the Plaintiffs' equal opportunity to use and enjoy a dwelling on the basis of handicap, in violation of the Fair Housing Act and the Americans with Disabilities Act;

3. Enter a temporary restraining order and/or preliminary and permanent injunctions enjoining Defendant, Tullytown Borough, its officers, employees, agents, attorneys and successors, and all persons in active concert or participating with any of them, from interfering with developing 412 and 444 Main Street as a home for recovering alcoholics and substance abusers, and/or from interfering in any way with the rights of the Plaintiffs to reside in those premises;

4. Enter a temporary restraining order and/or preliminary and permanent injunctions enjoining Tullytown Borough, its officers, employees, agents, attorneys and successors, and all persons in active concert or participating with any of them from actively assisting the Defendant, in its efforts to interfering with the rights of recovering alcoholics or substance abusers to reside at 415 Main Street.

5. Enter an order declaring that Plaintiffs' use of 412 and 444 Main Street as recovery

housing is consistent with classification of the premises as a single family dwelling, and requiring Tullytown Borough to apply all zoning, safety, property maintenance and building codes to Plaintiffs' use of 412 and 444 Main in the same manner as it does to all other single family dwellings and to recovery homes licensed by the State of Pennsylvania;

     6.     Award compensatory damages;

     7.     Grant an award of reasonable costs and attorneys fees; and,

     8.     Order other such other relief as the Court deems just and proper.

/S/ Nancy Marcus Newman

NANCY MARCUS NEWMAN, ESQ.
3406 Goshen Road
Newtown Square, PA 19073
610-213-6303
(484) 933-5858 (fax)
nnewmanesq@gmail.com

Attorney for Plaintiff

Of Counsel

Steven G. Polin
3034 Tennyson Street NW
Washington, D.C. 20015
202-331-4848
202-331-4849 (fax)
spolin2@earthlink.net